Opinión de conformidad emitida por la
Juez Asociada Se-ñora Rodríguez Rodríguez,
a la que se unen el Juez Pre-sidente Señor Hernández Denton, la Jueza Asociada Se-ñora Fiol Matta y el Juez Asociado Señor Estrella Martínez.
En esta ocasión teníamos la oportunidad de pautar cuál es el nivel de responsabilidad aplicable a un patrono por actos de hostigamiento sexual en el empleo cometidos por sus empleados. En particular, debíamos determinar si erró el Tribunal de Apelaciones al resolver que un patrono puede desprenderse de su responsabilidad por actos de hostigamiento sexual de sus agentes o supervisores sobre subalternos, mediante actos afirmativos para prevenir o corregir las actuaciones indebidas.
Desafortunadamente, no hemos logrado un consenso so-bre los fundamentos para revocar al foro apelativo, por lo cual no se emite hoy una opinión. Ello, a pesar de que el texto del Artículo 5 de la Ley Núm. 17 de 22 de abril de 1988 (Ley Núm. 17), 29 LPRA sec. 155d, conocida como la Ley de Hostigamiento Sexual en el Empleo, tal cual fue *9 redactado por el legislador, ofrece a mi juicio una clara respuesta.
Por entender que el Artículo 5 de la Ley Núm. 17, supra, establece claramente una responsabilidad vicaria de la cual no puede desvincularse el patrono cuando el hostiga-dor es un agente o supervisor de la persona hostigada, es-toy conforme con el resultado al que llegamos, mas revoca-ría expresamente los fundamentos de derecho esbozados por el Tribunal de Apelaciones en la sentencia recurrida y pautaría como derecho aquello que el legislador quiso.
I
A
El 5 de abril de 2001, Haydeé Ortiz González, junto a su esposo, Carlos Olivero Santos, y en representación de la sociedad legal de gananciales compuesta por ambos, pre-sentaron una demanda en contra de Caribbean Restaurants, antiguo patrono de la demandante; Daisy Vázquez, gerente del establecimiento de comida rápida Burger King en el que trabajaba la demandante, y José Rivera, subge-rente del mismo local. Los demandantes alegaron que la señora Ortiz González fue víctima de hostigamiento sexual, persecución y represalias, por lo que solicitaron una indemnización en daños y perjuicios al amparo de la Ley Núm. 17; la Ley Núm. 69 de 6 de julio de 1985, 29 LPRA see. 1321 et seq.; la Ley Núm. 100 de 30 de junio de 1959, 29 LPRA see. 148 et seq.; los Artículos 1802 y 1803 del Código Civil, 31 LPRA sees. 5141-5142, y la Constitu-ción del Estado Libre Asociado de Puerto Rico.
Por su parte, Caribbean negó que fuera responsable se-gún cualesquiera de los estatutos mencionados. Replicó que cumplió con sus obligaciones legales al tomar las me-didas correctivas que requiere el ordenamiento.
*10 El 26 de agosto de 2003, el Tribunal de Primera Instan-cia desestimó la acción personal contra la señora Vázquez, manteniéndola en el pleito sólo en su carácter institu-cional. Asimismo, el 16 de diciembre de ese año, el foro primario desestimó las reclamaciones del señor Olivero.
Finalizado el desfile de la prueba presentada en juicio el 16 de noviembre de 2007, el Tribunal de Primera Instancia dictó sentencia mediante la cual desestimó la reclamación por despido injustificado, así como las reclamaciones al amparo de la Ley Núm. 100 y la Ley Núm. 69. Además, realizó una lista extensa de determinaciones de hechos, cuyos puntos medulares se resumen a continuación.
B
Caribbean Restaurants es una corporación dedicada al expendio de comidas rápidas en sus restaurantes Burger King. La demandante fungió como empleada general en el Burger King de Villa Blanca, en Caguas, desde el 9 de no-viembre de 1999 hasta la fecha de su renuncia, el 19 de abril de 2001. El grupo gerencial de este restaurante con-sistía de un gerente en propiedad, un subgerente y tres asistentes de gerente. Para la fecha de los hechos aquí en controversia, la señora Vázquez era la gerente, mientras que el señor Rivera era el subgerente.
Como parte de sus funciones como gerente en propie-dad, la señora Vázquez se encargaba de asignar las tareas de trabajo, incluyendo los turnos (horarios) de cada empleado. En ausencia de la señora Vázquez, el señor Rivera asumía la dirección del restaurante.
La señora Ortiz González alegó que el subgerente Rivera la hostigó sexualmente desde mayo hasta agosto de 2000. Durante el período en que coincidieron en el restau-rante, éste le profirió a la demandante, en momentos dis-tintos, los siguientes comentarios: “mami, ¿todo eso es *11 tuyo?”, “si te cojo, te saco la habichuelita” y “a ti lo que te hace falta es un buen beso de lengua”. También manifestó la demandante que, cuando el señor Rivera trataba de pa-sar por un espacio limitado, rozaba su cuerpo contra el de ella y que aprovechaba la potestad que tenía para asig-narle tareas que desembocaran en este tipo de situación. Esta se sintió ofendida por estos hechos y expresó al señor Rivera que evitara el trato irrespetuoso hacia ella.
En una ocasión, el señor Rivera se dirigió de manera agresiva hacia la demandante y le ordenó que “soltara el cabrón teléfono”. El 27 de agosto de 2000, la demandante se quejó con la gerente Vázquez sobre este incidente. A raíz de esta queja, la gerente reunió a la partes para atender el asunto y el señor Rivera admitió haber realizado el comen-tario, por lo cual pidió disculpas a la demandante. Frente a la gerente, se comprometió a evitar futuras confrontacio-nes entre las partes. Sin embargo, una vez terminó la re-unión, Rivera le dijo a la demandante, en tono agresivo, que “si la cosa estaba mala, se iba a poner peor”. Como secuela de esto, la demandante intentó acudir nuevamente a la gerente, mas ésta no la atendió.
Durante este tiempo, la compañía tenía vigente políti-cas institucionales que prohibían el hostigamiento sexual en el empleo y establecían un procedimiento para dilucidar controversias relacionadas con dicha conducta. La deman-dante recibió una copia de dichas políticas antes de comen-zar a trabajar con Caribbean, así como adiestramiento adi-cional al respecto durante su tiempo con la empresa. Además, la compañía tenía en todas sus instalaciones y restaurantes afiches del Departamento del Trabajo, en los que mostraba sus políticas antidiscrimen y contra el hosti-gamiento sexual. También tenía una línea telefónica especial para atender cualquier duda o queja al respecto.
El procedimiento para entablar una queja de hostiga-miento sexual de acuerdo con la política de la compañía consistía en pedirle al empleado que presentara una queja *12 por escrito. Dicha política establecía claramente la manera y lugar donde presentarlas.
El 30 de agosto de 2000, la demandante se acercó a la gerente Vázquez para indicarle que deseaba presentar una queja de hostigamiento sexual contra el señor Rivera. La gerente le informó que debía preparar un informe por escrito. Al próximo día, la demandante informó a la super-visora que no quería continuar con la queja contra Rivera. La gerente se lo indicó al Supervisor de Area de la em-presa, el señor Rodríguez, y éste le explicó que, al haber sido notificados de un posible problema de hostigamiento sexual, tenían que cumplir con la política de la compañía e investigar el asunto. Ese mismo día, la demandante se re-unió con el señor Rodríguez y le entregó la queja escrita contra el señor Rivera. El Supervisor citó a las partes para una reunión a llevarse a cabo el martes, 5 de septiembre de 2000 en las oficinas centrales de la compañía. Además, por instrucciones de la alta gerencia de la compañía se le ad-virtió al señor Rivera que, como medida preventiva, no po-día regresar a su lugar de trabajo hasta tanto se investi-gara la queja en su contra.
La demandante acudió a la reunión pautada y reiteró que el hostigamiento consistió de varios comentarios por parte del señor Rivera, en específico: “mami, dame de eso”, “mami, todo eso es tuyo”, “si te cojo, te saco la habichuelita” y “lo que tú necesitas es un buen beso de lengua”. Además, se quejó de que en el área de la nevera del restaurante el señor Rivera extendió la mano para tocarla. Finalmente, expresó que el señor Rivera se dirigió a ella con palabras soeces al decirle que “en vez de estar sacando la comida, est[aba] pendiente al cabrón teléfono”. A preguntas de la gerencia, respondió no haberse quejado sobre esta con-ducta de Rivera antes de reunirse con la gerente Vázquez el 30 de agosto de 2000.
Concluida la reunión con la demandante, la gerencia entrevistó a la Sra. Ivette Díaz, empleada del mismo res- *13 taurante, quien confirmó haber escuchado a Rivera decir a la demandante los comentarios imputados. Agregó que a la demandante no pareció molestarle; que ésta sonrió; que la demandante y Rivera se tenían confianza y que bromeaban entre sí. Por último, la gerencia citó al señor Rivera para confrontarlo con las alegaciones realizadas en su contra. Al finalizar la entrevista, Caribbean permitió al señor Rivera renunciar “voluntariamente” para, según ellos, “no tener que manchar su expediente de trabajo”.
Al día siguiente de la reunión en las oficinas centrales de la empresa, el despido del señor Rivera era de conoci-miento general en el lugar de empleo de la demandante. Las bromas hacia su persona eran la orden del día y le culpaban por lo sucedido. Expresiones de mofa como “no me toques, que te denuncio por hostigamiento sexual” se repetían mientras trabajaba. La gerente Vázquez patroci-naba y permitía las bromas. A pesar de las quejas de la demandante, Vázquez no detuvo el ambiente de relajo e irrespeto. Como si fuera poco, en múltiples ocasiones luego de su despido, el señor Rivera se presentó al área de tra-bajo de la demandante y se detuvo a mirarla, murmu-rando, con la anuencia de la gerente Vázquez, por lo que la demandante se sintió intimidada.
C
Tras evaluar el cuadro fáctico descrito anteriormente, el juez de instancia concluyó que el codemandado Rivera in-currió en actos de hostigamiento sexual hacia la demandante. Según el foro primario, “las actuaciones de Rivera crearon un ambiente de trabajo ofensivo para la demandante, al punto que sufrió, emocionalmente, al ser rebajada como mujer”. Ortiz González v. Burger King, EDP2011-0180 (612), pág. 24. Caso Núm. CC-2009-0243, Ira Pieza, Certiorari, Apéndice, pág. 255.
*14 Sobre el proceder de Caribbean, ese foro expresó lo si-guiente:
Realmente hay que reconocer que la alta jerarquía de Caribbean Restaurants trató el hostigamiento sexual de Rivera hacia la demandante de manera adecuada. Tan pronto advino en conocimiento del hostigamiento lo documentó [...] Despidió (indirectamente) a Rivera y en todo momento mantuvo un cen-tro de trabajo libre de hostigamiento sexual al prevenirlo y desalentarlo a través de sus adiestramientos, reglamentos y carteles al respecto. Caribbean Restaurants actuó afirmativa-mente en autos como un patrono debe conducirse para preve-nir y remediar un caso de hostigamiento sexual.
No obstante esto, Caribbean Restaurants responde por las actuaciones de Rivera por el mero hecho de ser éste un supervisor de la empresa. Caribbean Restaurants, desafortunada-mente, responde por la actuación de Rivera, según dispone el Artículo 5 de la Ley 17.
En Puerto Rico, a diferencia del estado de derecho federal, el patrono responde de manera absoluta por los actos de hostiga-miento sexual de un supervisor. Rodríguez Meléndez v. Sup. Amigo, Inc., 126 DPR 117 (1990). (Énfasis suplido)(1) Ortiz *15 González v. Burger King, ADP2011-0180 (612), págs. 24-25, Caso Núm. CC-2009-0243, Ira Pieza, Certiorari, Apéndice, págs. 255-256.
Por ende, resolvió que los demandados debían indemni-zar a la demandante de manera solidaria mediante el pago de $10,0000 en daños, perjuicios y angustias mentales por los actos de hostigamiento sexual del señor Rivera; $1,000 según el Artículo 1803 del Código Civil, supra, por los da-ños ocasionados por la codemandada Daisy Vázquez al per-mitir un ambiente de humillación posterior al momento en que la demandante delató el patrón de hostigamiento sexual; costas y $2,750 en honorarios de abogado.
El 7 de febrero de 2008, la demandante presentó una moción mediante la cual solicitó determinaciones adiciona-les de hechos y de derecho. Por otro lado, el 13 de febrero del mismo año, Caribbean solicitó reconsideración de la sentencia emitida. El tribunal inferior denegó ambas mo-ciones el 20 de marzo y el 4 de abril de 2008, respectiva-mente.
Inconformes, tanto la demandante como los demanda-dos acudieron oportunamente al Tribunal de Apelaciones. La demandante argüyó que la indemnización concedida es- *16 taba muy por debajo de los daños causados y que la Ley Núm. 17 requería que dicha cuantía fuere duplicada. Caribbean, en cambio, sostuvo que actuó de manera diligente y que tomó las medidas correctivas necesarias antes y des-pués de los eventos que dieron vida a esta controversia, por lo que no estaba obligada a responder económicamente por los actos de sus empleados. Por su parte, el Sr. José Rivera se opuso al recurso presentado por la demandante y plan-teó que no se establecieron los elementos de hostigamiento sexual ni se demostró que la conducta imputada causara cambios en los términos y las condiciones del empleo de la demandante. Además, alegó que, de concluirse que hubo tal hostigamiento, el patrono debía responder por tratarse de un caso de responsabilidad “absoluta”.
El Tribunal de Apelaciones consolidó los recursos pre-sentados individualmente por las partes y, por voz de su presidenta, el 30 de junio de 2008 dictó una resolución me-diante la cual exoneró a Caribbean de responder por los actos de hostigamiento sexual cometidos por el señor Rivera(2) Según el foro apelativo intermedio:
Aunque la Ley 17, supra, parece imponer responsabilidad absoluta a los patronos por actos de hostigamiento sexual co-metidos por sus agentes o supervisores no debe prevalecer esta interpretación. El principio de responsabilidad absoluta no es cónsono con el análisis que debe seguirse al aplicar esta ley. Por el contrario, debe considerarse el artículo 4 del mismo cuerpo de ley que dispone: “Para determinar si la alegada con-ducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos [...]”. Asimismo, según se expresó en el Informe de la Cámara de Representantes, 23 de marzo de 1988, a las págs. 11 y 12, citando Meritor Savings v. Vinson, 477 US 57 (1986), los patronos no son automáticamente responsables de los actos de hostigamiento sexual cometidos por sus supervisores. Esta interpretación busca mantener un balance y equilibrio en la *17 aplicación de esta ley, de modo que considera los hechos particulares de cada caso y las circunstancias en que ocurrieron, para impedir responsabilizar de manera absoluta y automática a los patronos por los actos de sus supervisores. (Enfasis suplido). Ortiz González v. Burger King, KLAN08 0551, KLAN08 0567 y KLAN08 0579, págs. 25-26, Caso Núm. CC-2009-0243, Ira Pieza, Certiorari, Apéndice, pág. 133.
Conforme a este criterio, el tribunal apelativo liberó de responsabilidad a Caribbean tras concluir que la empresa cumplió con sus responsabilidades legales al promover ac-tivamente una política de prevención y de corrección de actos de hostigamiento sexual en el empleo. Por lo tanto, responsabilizó exclusivamente al señor Rivera por sus ac-tos y le ordenó satisfacer por sí solo el pago de los honorarios. Sobre las acciones de la gerente Vázquez, el Tribunal mantuvo la responsabilidad impuesta a la compa-ñía según el Artículo 1803 del Código Civil, supra. Además, dispuso que las costas serían satisfechas solidariamente por todos los demandados. Por último, en cuanto a la suma de $10,000 concedida como compensación por los daños ocasionados, el Tribunal concluyó que ésta era adecuada, mas procedió a duplicarla conforme al mandato expreso del Artículo 11 de la Ley Núm. 17.
Aún inconforme, el 30 de marzo de 2009, el señor Rivera acudió oportunamente ante nosotros mediante recurso de certiorari para solicitar la revocación de la sentencia emi-tida por el foro intermedio. Planteó que el Tribunal de Ape-laciones erró al determinar que incurrió en actos de hosti-gamiento sexual en su modalidad de ambiente hostil. Además, sostuvo que erró dicho Tribunal al confirmar los daños adjudicados y, en la alternativa, que la empresa Caribbean respondía solidariamente por dichos daños por mandato de la Ley Núm. 17.
Por su parte, el 24 de marzo de 2009, la señora Ortiz González compareció ante nosotros mediante recurso de certiorari en el cual planteó que las sumas otorgadas esta- *18 ban muy por debajo de la valoración objetiva de los perjui-cios sufridos. Además, argüyó que erró el Tribunal de Ape-laciones al revocar la imposición de responsabilidad solidaria a Caribbean y al dejar sin efecto la fijación de honorarios de abogado a dicho patrono.
El 18 de septiembre de 2009 denegamos el recurso pre-sentado por el señor Rivera. Sin embargo, el 30 de octubre del mismo año reconsideramos nuestra decisión y expedi-mos el auto. El recurso de la señora Ortiz González fue expedido el 8 de octubre del mismo año. El 18 de agosto de 2010 ordenamos la consolidación de ambos recursos. Con el beneficio de la comparecencia de todas las partes, resolvemos.
HH HH
A
Es un principio rector de nuestro orden social, estable-cido en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, que la dignidad del ser hu-mano es inviolable. A su amparo se prohíbe expresamente el discrimen por razón de raza, color, sexo, nacimiento, ori-gen, condición social e ideas políticas o religiosas. Además, también como derivado lógico del imperativo de la digni-dad, nuestra Constitución protege a toda persona contra ataques abusivos a su honra, reputación y vida privada o familiar. Art. II, Secs. 1 y 8, Const. ELA, LPRA, Tomo 1.
Cumpliendo con este mandato constitucional, la Asam-blea Legislativa ha adoptado leyes que protegen la digni-dad del ser humano en el contexto laboral. Entre éstas se aprobó la Ley Núm. 17 de 22 de abril de 1988 con el pro-pósito de elevar el hostigamiento sexual en el empleo al mismo nivel jurídico que las otras modalidades de discri- *19 men identificadas y proscritas en leyes anteriores. Exposi-ción de Motivos de la Ley Núm. 17, 1988 Leyes de Puerto Rico 80. Esta ley prohíbe el hostigamiento sexual en el empleo y lo declara como una forma de discrimen por razón de género que atenta contra la dignidad humana. 29 LPRA see. 155. Albino v. Ángel Martínez, Inc., 171 DPR 457, 470 (2007).
El Art. 3 de la Ley Núm. 17 define el hostigamiento sexual en el empleo de la manera siguiente:
El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de fa-vores sexuales y cualquier otra conducta verbal o física de na-turaleza sexual, cuando se da una o más de las siguientes circunstancias:
(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del em-pleo de una persona.
(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
(c) Cuando esa conducta tiene el efecto o propósito de inter-ferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. 29 LPRA sec. 155b. Albino v. Ángel Martínez, Inc., supra, pág. 471.
El hostigamiento sexual en el empleo tiene, pues, dos modalidades. Los incisos (a) y (b) de la definición citada se refieren a la modalidad de hostigamiento equivalente o quid pro quo, mientras que el inciso (c) recoge la modalidad de hostigamiento sexual por ambiente hostil. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643, 653 (1994). La determinación de si determinada conducta en el empleo constituye hostigamiento sexual, en cualquiera de sus dos modalidades, se hará considerando la totalidad de las cir-cunstancias y los hechos particulares de cada caso. 29 LPRA sec. 155c. Albino, supra, pág. 471.
Hemos resuelto que la modalidad de hostigamiento *20 equivalente o quid pro quo se produce cuando el someti-miento o rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo. El demandante debe, por lo tanto, probar que el sometimiento o el rechazo a la solicitud de favores sexuales y al sufrimiento de avances de igual tipo fue la causa de una decisión adversa en cuanto a una condición o un término de su empleo. Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 132. Véase, además, S.L.G. Afanador v. Roger Electric Co., Inc., 156 DPR 651 (2002). Si es despedido u obligado a renunciar, el demandante debe es-tablecer que las deficiencias en el desempeño de sus fun-ciones laborales, por las cuales fue despedido o que lleva-ron a su renuncia, son consecuencia directa del ambiente hostil en el que se vio obligado a trabajar. Deberá probar también que estuvo sujeto a hostigamiento sexual por ambiente hostil. Albino, supra, págs. 471-472. Sup. Amigo, Inc., supra, pág. 133. Véase, además, In re Robles Sanabria, 151 DPR 483, 501 (2000).
La modalidad de hostigamiento sexual por ambiente hostil se produce cuando la conducta sexual hacia una persona tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear un ambiente laboral intimidante, hostil u ofensivo. La justiciabilidad de una reclamación por ambiente hostil no requiere que dicha con-ducta produzca un daño económico y tampoco es indispensable que ésta sea de naturaleza explícitamente sexual; basta con que el hostigamiento o trato desigual se dirija a la persona únicamente por razón de su género. La con-ducta constitutiva de hostigamiento debe ser lo suficiente-mente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse tomando en consideración factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, su duración, y la conducta y circunstancias personales de la alegada *21 víctima. Albino, supra, pág. 472; Sup. Amigo, Inc., supra, págs. 131-132. Véanse, además: S.L.G. Afanador, supra; In re Robles Sanabria, supra, págs. 500-501.
Una vez se determina que una conducta constituye hos-tigamiento sexual en el empleo, la Ley Núm. 17 establece cómo responsabilizar o exonerar al patrono por las conse-cuencias de la conducta ilegal. Albino, supra, pág. 472. La responsabilidad patronal por actos de sus empleados de-penderá de la relación existente entre la persona que hos-tiga y la hostigada.
Así, el Artículo 6 de la Ley Núm. 17 dispone que “[u\n patrono será responsable por los actos de hostigamiento sexual entre empleados en el lugar de trabajo si el patrono o sus agentes o sus supervisores sabían o debían estar en-terados de dicha conducta, a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación”. (Énfasis suplido). 29 LPRA sec. 155e. Con-forme a este artículo, cuando el empleado que hostiga se encuentra en la misma jerarquía que la empleada hosti-gada sexualmente, debemos aplicar el estándar tradicional de negligencia y el patrono sólo responderá si sabía o debía saber de la conducta ilegal, y no tomó las medidas necesa-rias para prevenirla y corregirla inmediatamente.
En cambio, cuando el hostigador es un agente o supervisor de la persona hostigada, debemos regirnos por lo dis-puesto en el Artículo 5 de la Ley Núm. 17, supra, según el cual “[u]n patrono será responsable de incurrir en hostiga-miento sexual en el empleo por sus actuaciones y las ac-tuaciones de sus agentes o supervisores independiente-mente de si los actos específicos objeto de controversia fueron autorizados o prohibidos por el patrono e indepen-dientemente de si el patrono sabía o debía estar enterado de dicha conducta”. (Énfasis suplido). Resulta evidente que la responsabilidad impuesta en este caso es de carácter vica-rio habida cuenta de que el patrono está obligado a responder legalmente por los actos de terceras personas por vir- *22 tud de la relación existente entre él y la persona que lleva a cabo el acto de hostigamiento sexual.
A pesar de la claridad empleada por la Asamblea Legislativa en la redacción del Artículo 5, el Tribunal de Apelaciones resolvió que la Ley Núm. 17 no estableció realmente una responsabilidad vicaria de la cual no pudiera desvincularse el patrono. Según el foro apelativo intermedio, la lectura de este artículo debía acomodarse a lo dispuesto por el Tribunal Supremo de Estados Unidos en Meritor Sav. Bank, FSB v. Vinson, 477 US 57 (1986), en torno a que los patronos no son automáticamente responsables de los actos de hostigamiento sexual cometidos por sus supervisores. Con el propósito de evaluar adecuadamente las bases en que se sostiene el dictamen recurrido, proce-demos a analizar el trato conferido al hostigamiento sexual en el empleo en el ámbito federal.
B
Contrario a lo que sucede en nuestra jurisdicción, a nivel federal no existe legislación específica que prohíba expresamente el hostigamiento sexual en el empleo. No obstante, esta protección surge del Título VII de la Ley Federal de Derecho Civiles, 42 USCA secs. 2000e-1 a 2000e-17 (1964), la cual proscribe el uso de prácticas discriminatorias en el empleo y veda específicamente el dis-crimen por razón de raza, color, religión, origen nacional y sexo. Tras la aprobación de la Ley de Derechos Civiles en 1964, los tribunales federales dejaron claro la intención congresional de “eliminar toda barrera artificial, arbitraria e innecesaria, específicamente cuando dichas barreras in-dudablemente operan para discriminar a base de una clasificación de tipo racial o de otro tipo igualmente impermisible”. (Traducción nuestra). Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 125, citando Griggs v. Duke Power Co., 401 US 424, 431 (1971).
*23 Sin embargo, aun con el beneficio de pronunciamientos como éste, los tribunales de instancia comúnmente rehusa-ban reconocer las causas de acción presentadas por em-pleadas que alegaron hostigamiento. Véanse: Corne v. Bausch & Lomb, Inc., 390 F.Supp. 161 (D. Ariz. 1975); Miller v. Bank of America, 418 F.Supp. 233 (N.D. Cal. 1976); Tomkins v. Public Service Elec. & Gas Co., 422 F.Supp. 553 (D. N.J. 1976); Fisher v. Flynn, 598 F.2d 663 (1er Cir. 1979). Véase, además, Sup. Amigo, Inc., supra, págs. 125-126.
Para atender la falta de uniformidad en la adjudicación de casos en donde se alegaba la existencia de hostiga-miento sexual en el empleo, en 1980, la Comisión de Igual-dad de Oportunidades en el Empleo (EEOC, por sus siglas en inglés) emitió unas guías que sirvieron de norte a los tribunales. Sup. Amigo, Inc., supra, pág. 126. Los primeros incisos de estas guías sobre discrimen por razón de sexo leían de la manera siguiente:
(a) El hostigamiento sobre la base de sexo es una violación a la See. 703 del Título VII. Avances sexuales que no son bien recibidos, solicitudes de favores sexuales y cualquier otra con-ducta física o verbal de naturaleza sexual, constituye hostiga-miento sexual cuando (1) el aceptar tal conducta es explícita o implícitamente un término o condición para el empleo de un individuo, (2) el aceptar o rechazar dicha conducta por parte de un individuo se utiliza como base para tomar decisiones sobre empleo que afectan a tal individuo o (3) dicha conducta tiene el propósito o efecto de interferir irrazonablemente con la realización del trabajo de un individuo o crear un ambiente de trabajo intimidante, hostil u ofensivo.
(b) Al determinar si una alegada conducta constituye un hostigamiento sexual, la Comisión considerará el récord com-pleto y la totalidad de las circunstancias, tales como la natu-raleza de las proposiciones sexuales y el contexto en que ocu-rrieron los alegados incidentes. La determinación de legalidad de una acción particular se hará a base de los hechos y caso por caso.
(c) Al aplicar los principios generales del Título VII, un pa-trono, agencia de colocaciones, comité de aprendices u organi- *24 zación laboral (en lo sucesivo mencionados colectivamente como “patrono”) es responsable por sus actos y por aquéllos de sus agentes y supervisores con respecto al hostigamiento sexual independientemente de si los actos específicos de los cuales se protesta estuviesen autorizados o hasta prohibidos por el patrono e independientemente de si el patrono conocía o debía conocer de su existencia. La Comisión examinará las cir-cunstancias de la relación laboral específica y de los trabajos realizados por el individuo para determinar si un individuo actúa en capacidad de supervisor o de agente. (Traducción nuestra, énfasis en el original suprimido y énfasis suplido), íd., citando a 29 CFR sec. 1604.11 (1983).
A raíz de la aprobación de estas guías, dos importantes opiniones de los tribunales de apelaciones de Estados Unidos insuflaron nuevos bríos a la definición de hostigamiento sexual. En Bundy v. Jackson, 641 F.2d 934 (D.C. Cir. 1981), la demandante alegó que luego de rechazar va-rias proposiciones sexuales de varios de sus supervisores, comenzó a recibir críticas en su trabajo y se le negó en diversas ocasiones la posibilidad de recibir un ascenso. El Tribunal, fundamentándose mayormente en las guías pro-mulgadas por le EEOC y la opinión de Barnes v. Costle, 561 F.2d 983 (D.C. Cir. 1977), concluyó que cuando, sin una justificación válida, el sexo constituye un factor determinante en una decisión relacionada con el empleo de una persona, existe discrimen por razón de sexo. Sup. Amigo, Inc., supra, págs. 127-128. Un año más tarde, Henson v. City of Dundee, 682 F.2d 897 (11mo Cir. 1982), reafirmó la doctrina establecida en Bundy, en cuanto a que la creación de un ambiente de trabajo hostil por medio de hostigamiento sexual puede, por sí solo, servir de fundamento para una reclamación por discrimen por razón de sexo, al amparo de las disposiciones del Título VII de la Ley Federal de Derecho Civiles de 1964. Sup. Amigo, Inc., supra, pág. 128.
Luego de estas opiniones, los tribunales se mostraron más receptivos a un enfoque de mayor protección. Katz v. Dole, 709 F.2d 251 (4to Cir. 1983); Phillips v. Smalley Ma *25 intenance Services, Inc., 711 F.2d 1524 (11mo Cir. 1983); Craig v. Y & Y Snacks, Inc., 721 F.2d 77 (3er Cir. 1983); Horn v. Dukes Homes, Div. of Windsor Mobile Homes, Inc., 755 F.2d 599 (7mo Cir. 1985); King v. Palmer, 778 F.2d 878 (Cir. D.C. 1985); Moylan v. Maries County, 792 F.2d 746 (8vo Cir. 1986); Sup. Amigo, Inc., supra, pág. 129.
Finalmente, la proliferación de decisiones en los tribu-nales de apelaciones allanó el camino para que el Tribunal Supremo federal se pronunciara al respecto en Meritor Sav. Bank, FSB v. Vinson, supra. Sup. Amigo, Inc., supra, pág. 129. En este caso paradigmático, una empleada del banco Meritor Savings presentó demanda al amparo del Título VII de la Ley de Derechos Civiles contra su patrono, para ser compensada por los daños sufridos como conse-cuencia de los actos discriminatorios realizados por su supervisor. La empleada trabajó en el banco desde 1974 hasta 1978, fecha en que fue despedida por presuntamente haber abusado de una licencia por enfermedad que le ha-bía sido concedida. Luego demandó al banco y a su supervisor. Alegó que a insistencias de este último, y por temor a perder su trabajo, accedió a tener con él relaciones sexuales. Durante los cuatros años que laboró en el banco tuvo relaciones íntimas con su supervisor en unas cua-renta o cincuenta ocasiones. Además, indicó que éste la seguía al baño de las damas, le coqueteaba frente a otros empleados y la obligó en varias ocasiones a sostener rela-ciones involuntariamente. Finalmente, aclaró que nunca notificó la conducta del supervisor por miedo a perder su trabajo.
El tribunal de distrito desestimó la demanda según el razonamiento de que si la empleada y el supervisor sostu-vieron relaciones sexuales íntimas, éstas fueron total-mente voluntarias y sin ninguna relación con su perma-nencia en el empleo. En vista de ello, negó la existencia de hostigamiento sexual y, por consiguiente, la posible viola-ción al Título VII de la Ley Federal de Derechos Civiles. *26 Sup. Amigo, Inc., supra, págs. 129-130. El tribunal de ape-laciones emitió sentencia mediante la cual revocó el dicta-men recurrido y resolvió que un patrono respondía de ma-nera vicaria por los actos de hostigamiento sexual en el empleo cometidos por sus supervisores.
El Tribunal Supremo federal confirmó la sentencia del foro apelativo y resolvió que un demandante puede esta-blecer una violación al Título VII de la Ley de Derechos Civiles mediante prueba de que actos de discrimen por ra-zón de sexo han generado un ambiente de trabajo hostil o abusivo. Estos actos deben ser lo suficientemente severos como para alterar las condiciones de empleo y crear un ambiente de trabajo desfavorable para la víctima. Meritor Savings, supra, págs. 66-67. El Tribunal rechazó el argu-mento del peticionario en torno a que la empleada debía probar haber sufrido una pérdida económica para poder ser compensada al amparo del Título VII. Además, aclaró que para determinar si los acercamientos sexuales de un supervisor constituyen hostigamiento según el Título VII, la pregunta correcta es si la demandante, mediante su con-ducta, demostró que las alegadas proposiciones sexuales no fueron bien recibidas, y no si su participación real en la relación sexual fue “voluntaria”. Id., pág. 68.
En cuanto a la responsabilidad del patrono por los actos de hostigamiento sexual perpetrados por sus supervisores, el Tribunal Supremo federal modificó la sentencia del foro apelativo y rechazó expresamente establecer una norma definitiva sobre el asunto. Sin embargo, concluyó que la decisión del Congreso estadounidense de incluir en la defi-nición del término patrono a cualquier agente del patrono, 42 USCA sec. 2000e(b), evidenciaba la intención de esta-blecer algún límite a la responsabilidad de los patronos por los actos discriminatorios de sus empleados al amparo del Título VII. Meritor Savings, supra, pág. 72. Por tal razón, resolvió que el tribunal apelativo erró el concluir que *27 los patronos siempre son responsables automáticamente por el hostigamiento sexual de sus supervisores.
Con este proceder, el Tribunal Supremo federal optó por distanciarse de las guías establecidas por la EEOC en cuanto a la responsabilidad patronal, las cuales imponían responsabilidad vicaria al patrono independientemente de si los actos específicos de los cuales se protestaba estaban autorizados o hasta prohibidos por el patrono e indepen-dientemente de si el patrono conocía o debía conocer de su existencia. El Juez Marshall emitió una opinión concu-rrente, a la cual se unieron tres jueces, en la que plasmó su insatisfacción con la distinción realizada por la mayoría. Según estos jueces, procedía adoptar en su totalidad la in-terpretación establecida por la EEOC en sus guías (tal y como se hizo para el resto de la opinión), las cuales mera-mente recogían lo resuelto constantemente por dicha comi-sión y por los tribunales, en torno a que los patronos son responsables por violaciones al Título VII por parte de sus supervisores, independientemente de su conocimiento o de cualquier otro factor mitigante. 45 Fed. Reg. 74676 (1980). Meritor Savings, supra, pág. 75.(3)
En 1998, doce años después de Meritor Savings, el Tribunal Supremo federal resolvió Burlington Industries, Inc. v. Ellerth, 524 US 742 (1998), y Faraguer v. City of Boca Ratón, 524 US 775 (1998).(4) En ambos casos, una empleada renunció a su empleo y presentó demanda ante un tribunal federal de distrito por alegado hostigamiento sexual en su modalidad de ambiente hostil por parte de un supervisor, en violación al Título VII de la Ley de Derechos Civiles. Ninguna de las dos empleadas notificó a la gerencia sobre los actos de hostigamiento previo a su renuncia.
*28 En Ellerth, el tribunal de distrito había resuelto que la conducta del supervisor había creado un ambiente de tra-bajo hostil. No obstante, dictó sentencia sumaria a favor del patrono tras concluir que éste no tenía conocimiento sobre la conducta del hostigador. Ellerth, supra, pág. 749. En Faraguer, en cambio, el tribunal de distrito halló res-ponsable al patrono tras concluir que, a pesar de haber adoptado una política contra el hostigamiento sexual, el patrono falló en comunicarla efectivamente al departa-mento en el cual laboraban la empleada y el supervisor. Faraguer, supra, págs. 781-783.
Utilizando un lenguaje idéntico en ambas opiniones, el Tribunal Supremo federal estableció la norma siguiente so-bre responsabilidad patronal por actos de hostigamiento sexual de supervisores sobre sus subalternos:
An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer’s burden under the second element of the defense. No affirmative defense is available, however, when the supervisor’s harassment culminates in a tangible employment action, such as a discharge, demotion, or undesirable *29 reassignment. Ellerth, supra, pág. 765; Faraguer, supra, págs. 807-808.(5)
Tras estos casos, la norma federal actual es que un pa-trono responde vicariamente por los actos de hostiga-miento sexual que creen un ambiente de trabajo hostil, co-metidos por sus supervisores o agentes sobre empleados de menor jerarquía institucional.(6) No obstante, cuando no se haya tomado acción laboral concreta contra una empleada como consecuencia de un rechazo a los acercamientos sexuales a los que estuvo sujeta {e.g., un despido, un des-censo o un traslado indeseado), el patrono podrá quedar relevado de responsabilidad si establece, mediante prepon-derancia de la prueba, que: (1) tomó las medidas necesa-rias para prevenir y corregir inmediatamente cualquier acto de hostigamiento sexual y que (2) la empleada deman-dante, de manera irrazonable, no tomó ventaja de ninguno de los mecanismos preventivos u oportunidades correctivas provistas por el patrono, ni aprovechó otras oportunidades para evitar el daño.
Al pautar esta norma, el Tribunal Supremo federal reconoció expresamente estar atado por sus pronunciamientos en Meritor Savings no sólo por la importancia de la doctrina de stare decicis, sino, además, porque el Congreso enmendó el Título VII de la Ley de Derechos Civiles, luego de decidirse el caso, con el fin de aumentar las compensa-ciones monetarias a concederse, así como para modificar algunas bases estatutarias en las que se había amparado el propio tribunal al interpretar la ley, mas mantuvo in- *30 tacta la norma pautada en Meritor Savings. Según el Tribunal, esto era indicio de que el Congreso había avalado su interpretación en torno a los posibles límites a la respon-sabilidad patronal. Véase Faraguer, supra, pág. 804 esc. 4.
Por esta razón, a pesar de que la norma declara afirma-tivamente que un patrono responde vicariamente por actos de hostigamiento sexual de sus supervisores, también se crea una defensa afirmativa que le permite al patrono ser relevado de responsabilidad siempre que se cumplan am-bos requisitos establecidos. Es decir, para que un patrono quede relevado de responsabilidad en la esfera federal, no es suficiente que muestre que tomó medidas preventivas o correctivas inmediatas. Se requiere además, que la em-pleada hostigada haya actuado de manera irrazonable se-gún la totalidad de las circunstancias al no hacer uso de los procedimientos establecidos por el patrono para atender el asunto, ni aprovechar otras oportunidades legítimas y ra-zonables para evitar el daño (“failed to take advantage [...] to avoid harm otherwise”). Mediante la creación de esta defensa afirmativa, el Tribunal Supremo federal reformuló la norma aplicable para evaluar la responsabilidad patro-nal por actos de hostigamiento sexual cometidos por super-visores en violación al Título VII de la Ley de Derechos Civiles, sin contravenir sus pronunciamientos previos en cuanto a que el patrono no siempre será responsable auto-máticamente por el hostigamiento sexual de sus superviso-res, según plasmado en Meritor Savings.
C
Tras evaluar el derecho vigente en nuestra jurisdicción sobre la protección contra el hostigamiento sexual en el empleo, así como el derecho federal al respecto, es evidente que el Tribunal de Apelaciones erró al exonerar de respon-sabilidad al patrono codemandado en este caso. Con su proceder, el foro apelativo intermedio obvió completamente *31 la letra clara del Artículo 5 de la Ley Núm. 17, el cual dispone lo siguiente:
Un patrono será responsable de incurrir en hostigamiento sexual en el empleo por sus actuaciones y las actuaciones de sus agentes o supervisores independientemente de si los actos específicos objeto de controversia fueron autorizados o prohibi-dos por el patrono e independientemente de si el patrono sabía o debía estar enterado de dicha conducta. (Enfasis suplido). 29 LPRA. sec. 155d.
El Artículo 14 del Código Civil dispone expresamente que “[c]uando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. 31 LPRA sec. 14. Es por ello que este Tribunal ha reiterado en innumerables ocasiones que el principio de hermenéutica que establece que “si el lenguaje de la ley no crea dudas y es claro en cuanto a su propósito, su propio texto es la mejor expresión de la intención legislativa”. Cruz Parrilla v. Depto. Vivienda, 184 DPR 393, 404 (2012). Véase Soc. Asist. Leg. v. Ciencias Forenses, 179 DPR 849, 862 (2010). Véase, además, Calderón v. Adm. Sistemas de Retiro, 129 DPR 1020, 1033-1034 (1992). Específicamente en Bomberos Unidos v. Cuerpo de Bomberos et al., 180 DPR 723, 749 (2011) (Rivera García, J.), dijimos:
El lenguaje claro y explícito de un estatuto no se debe tergi-versar, mucho menos malinterpretar o sustituir. La función de la Rama Judicial no es legislar, sino interpretar las leyes apro-badas por la Rama Legislativa y constatar que no estén reñi-das con la Constitución.
Evidentemente, conforme al lenguaje diáfano empleado en la redacción de la Ley Núm. 17, no puede existir duda alguna en torno a que el Artículo 5 impone una responsa-bilidad propiamente vicaria a todo patrono por actos de hostigamiento sexual llevados a cabo por sus supervisores. Como puede apreciarse fácilmente, el artículo en cuestión es una traducción literal del inciso (c) de las guías de la *32 EEOC. Tal y como reconoce tanto la opinión mayoritaria como la concurrente de Meritor Savings, las guías estable-cían una norma de responsabilidad vicaria de la cual no podían desvincularse los patronos mediante actos afirma-tivos para prevenir o remediar inmediatamente los actos de hostigamiento sexual de sus supervisores. El hecho de que el Tribunal Supremo de Estados Unidos federal se haya distanciado de las guías a la hora de interpretar la protección contra el hostigamiento sexual al amparo del Título VII de la Ley Federal de Derechos Civiles no dis-pone en absoluto de la controversia ante nuestra conside-ración, pues la protección contra el hostigamiento sexual en nuestro ordenamiento no proviene únicamente de esta ley federal, sino también de nuestra Constitución y, particular-mente, de ley especial que hoy interpretamos: la Ley Núm. 17.(7)
*33 Como señalamos anteriormente, el Tribunal de Apela-ciones concluyó que
[a]unque la Ley Núm. 17, supra, parece imponer responsa-bilidad absoluta a los patronos por actos de hostigamiento sexual cometidos por sus agentes o supervisores no debe pre-valecer esta interpretación. El principio de responsabilidad absoluta no es cónsono con el análisis que debe seguirse al aplicar esta ley. Por el contrario, debe considerarse el artículo 4 del mismo cuerpo de ley que dispone: “Para determinar si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos [...]”. Asimismo, según se expresó en el Informe de la Cámara de Representantes, 23 de marzo de 1988, a las págs. 11 y 12, citando a Meritor Savings v. Vinson, 477 US 57 (1986), los patronos no son automáticamente responsables de los actos de hostigamiento sexual cometidos por sus supervisores. Ortiz González v. Burger King, KLAN08 0551, KLAN08 0567 y KLAN08 0579, págs. 25-26. Caso Núm. CC-2009-0243, 1ra Pieza, Certiorari, Apéndice, págs. 132-133.
Esta conclusión es errada por tres razones funda-mentales. Veamos.
En primer lugar, confunde el propósito del Artículo 4 de la Ley Núm. 17, en el cual se establece el estándar aplica-ble para evaluar si cierta conducta constituye hostiga-miento sexual en el empleo (análisis según la totalidad de *34 las circunstancias), con el del Artículo 5, en el cual se pauta el nivel de responsabilidad atribuible al patrono por actos de hostigamiento sexual llevados a cabo por sus superviso-res o agentes (responsabilidad vicaria). Cierto es que la evaluación de si un acto constituyó o no hostigamiento sexual se hará según la totalidad de las circunstancias de cada caso, pero ello no tiene nada que ver con el nivel de responsabilidad que deberá asumir el patrono por dichos actos. Esa determinación dependerá, como hemos visto, de la relación existente entre el hostigador y la persona hostigada. De aceptarse la conclusión del tribunal apela-tivo, se tornaría innecesaria la distinción hecha por el le-gislador entre el los Artículos 5 y 6 de la Ley Núm. 17, pues, independientemente de que el hostigador fuera supervisor o empleado del mismo nivel jerárquico que la hos-tigada, aplicaría el mismo estándar (negligencia).
En segundo lugar, recurre innecesariamente al historial legislativo para interpretar una ley cuyo mandato es in-equívoco, en contravención a las normas de hermenéutica reiteradas continuamente por este Tribunal. Nos reitera-mos, cuando la ley es clara y no es ambigua, no hay nece-sidad de mirar más allá de su letra en búsqueda de la intención legislativa. Debemos descubrir y darle efecto a la intención expresada mediante la letra de la ley. Romero Barceló v. ELA, 169 DPR 460, 477 (2006), citando a Departamento de Hacienda v. Telefónica, 164 DPR 195, 215 (2005). Véase, además, N.J. Singer, 2A Statutes and Statutory Construction Sec. 48:06, págs. 439, 442-443 (2000).
En tercer lugar, el Tribunal de Apelaciones ignoró por completo las expresiones que sobre este tema vertiera este Foro desde hace más de dos décadas. En Sup. Amigo, Inc., supra, esta Curia tuvo la oportunidad de expresarse en torno a la protección contra al hostigamiento sexual en el empleo al amparo de la Constitución de Puerto Rico y de la Ley Núm. 100 de 30 de junio de 1959, 29 LPRA secs. *35 146-151. A pesar de que la Ley Núm. 17 ya estaba en vigor para ese entonces, los hechos del caso ocurrieron previo a su aprobación, por lo que el Tribunal no se refirió explíci-tamente a ella. Tras discutir tanto el derecho puertorri-queño como el federal, el Tribunal se expresó de la manera siguiente:
Aclarados estos extremos, nos resta determinar cuál debe ser la medida (standard) de responsabilidad aplicable al pa-trono en casos de hostigamiento sexual por uno de sus agentes o supervisores. En Meritor Savings Bank v. Vinson, supra, la opinión mayoritaria sugiere, sin resolverlo, que la responsabi-lidad del patrono debe ser absoluta en casos de hostigamiento sexual (quid pro quo), mientras que de acuerdo con la modali-dad de ambiente hostil lo será sólo si conocía, o razonable-mente debió conocer, lo que estaba ocurriendo y no hizo nada para corregirlo o evitarlo.(8) No es necesario incorporar este criterio de responsabilidad dual a nuestra jurisdicción,(9) (Escolios omitidos y énfasis suplido). Sup. Amigo, Inc., supra, pág. 133.
*36 A pesar de este reconocimiento por parte de la mayoría, el entonces Juez Asociado Señor Hernández Dentón enten-dió que el Tribunal se abstuvo innecesariamente de reali-zar un pronunciamiento claro y sin ambages en torno al nivel de responsabilidad de los patronos por actos de hos-tigamiento sexual cometidos por sus supervisores o agentes. Por tal razón, emitió una opinión concurrente en la que, luego de discutir el desarrollo de la lucha de la mujer para incorporarse a los modos de producción de nuestra sociedad, así como la necesidad de erradicar por completo el discrimen por razón de sexo en el empleo, ex-presó lo siguiente:
Conceptualizado el hostigamiento sexual como una manifes-tación del discrimen por razón de sexo, la Ley Núm. 100, supra, contiene los criterios de responsabilidad aplicables al pa-trono que incurre en violación. Contrario a la experiencia en Estados Unidos, esta ley impone responsabilidad al patrono en todos los casos de hostigamiento sexual por sus agentes, super-visores o representantes. Independientemente del tipo de hos-tigamiento sexual, la citada ley impide que un patrono esta-blezca las condiciones o privilegio o “limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo que afecten su status como empleado...”. (Énfasis suplido.) 29 LPRA see. 146. Cualquier tipo de condición o privilegio, o cualquier tipo de limitación que afecte a un empleado por razón de su sexo está proscrito por el estatuto y el patrono es responsable por la violación en que incurrió o en que incurrieron sus supervisores o agentes. Como es el patrono quien ejerce el mayor control sobre los supervisores y quien establece las reglas en el lugar de tra-bajo, la legislación le impone la responsabilidad sobre los actos de aquéllos a quienes seleccionó para dirigir las operaciones.
Esta norma de responsabilidad ha sido refrendada por el legislador en la ley que declara el discrimen por sexo una prác-tica ilegal del empleo, Ley Núm. 69 de 6 de julio de 1985 (29 LPRA see. 1321 et seq.), y la que amplía la prohibición de hostigamiento sexual en el trabajo, Ley Núm. 17 de 22 de abril de 1988 (29 LPRA see. 155 et seq.). Ambos estatutos son ins-trumentos adicionales que tiene la mujer obrera para prote-gerse en los talleres de trabajo. La Ley Núm. 17, supra, ex- *37 tiende la protección contra el hostigamiento entre empleados y personas no empleadas por el patrono.
En estas circunstancias procede que, a la luz de estas dispo-siciones, esta Curia defina el ámbito de la responsabilidad pa-tronal y no posponga para otra ocasión unos pronunciamientos sobre el área más neurálgica de la legislación contra el discrimen. Nos preocupa que el análisis inconcluso de la [...] opinión del Tribunal pueda dar lugar a una interpretación del derecho aplicable a base de los criterios de responsabilidad patronal sugeridos en Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986). Nuestra legislación no provee estas dos (2) vertientes de responsabilidad y la indefinición del Tribunal significa que tendrá que ser en otra ocasión donde nos pronuncie-mos sobre estos extremos. (Enfasis en el original suprimido y énfasis suplido). Sup. Amigo, Inc., supra, págs. 142-143.
Luego de veintidós años de espera, acogeríamos los pro-nunciamientos esbozados en Sup. Amigo, Inc., por el hoy Juez Presidente y resolveríamos inequívocamente que, con-forme al claro mandato recogido en el Artículo 5 de la Ley Núm. 17, todo patrono responde vicariamente por los actos de hostigamiento sexual realizados por sus agentes o super-visores dirigidos hacia empleados de menor jerarquía, in-dependientemente de si los actos específicos objeto de con-troversia fueron autorizados o prohibidos por el patrono e independientemente de si el patrono sabía o debía estar en-terado de dicha conducta.
Lo que hoy planteamos de manera explícita es cónsono con la forma en que este Tribunal ha atendido, desde la aprobación de la Ley Núm. 17, todos los casos de hostiga-miento sexual en el empleo presentados ante sí. Por ejemplo, en Rosario v. Dist. Kikuet, Inc., 151 DPR 634 (2000), el Tribunal tuvo que resolver si un supervisor que hostigó sexualmente a una empleada bajo su autoridad respondía por sus actos o si, en cambio, la responsabilidad recaía ex-clusivamente sobre el patrono de ambos. El argumento del supervisor en torno a que la intención legislativa fue res-ponsabilizar exclusivamente al patrono se basó parcial-mente en interpretaciones federales del Título VII. Tras *38 rechazar como un contrasentido el argumento del supervisor, este Foro reconoció que “[l]a legislación nuestra —que es objeto de examen en este caso [la Ley Núm. 17]— es mucho más abarcadora que el mencionado estatuto federal [Título VII de la Ley de Derechos Civiles], ya que incluye, no sólo toda clase de patronos independientemente de la cantidad de empleados que tenga, sino también a sus su-pervisores, oficiales, administradores y agentes. Por lo tanto, tales decisiones [federales] no son aplicables al caso de marras”. íd., pág. 644. En este caso, la responsabilidad vicaria del patrono por actos de sus supervisores y agentes se dio por sentado.
Asimismo, en Albino, supra, un caso en el que delinea-mos los contornos de la obligación patronal de tomar las medidas inmediatas y apropiadas para corregir cualquier acto de hostigamiento sexual entre empleados, la discusión del derecho aplicable recalcó nuevamente la distinción en-tre la doctrina federal y la nuestra. íd., págs. 472-473 esc. 4.
Por último, tan recientemente como en U.P.R. Aguadilla v. Lorenzo Hernández, 184 DPR 1001 (2012) (resuelto el 27 de marzo de 2012), en el cual nos expresamos por vez primera sobre la Ley de Hostigamiento Sexual en las Instituciones de Enseñanza, Ley Núm. 3 de 4 de enero 1998, 3 LPRA sec. 149 et seq., reconocimos que el nivel de responsabilidad de una institución de enseñanza por actos de hostigamiento sexual de sus empleados dependería de la relación existente entre el hostigador y la persona hostigada. Sobre esta conclusión, expresamos que: “Estos grados de responsabilidad, así como otros aspectos de la ley, la distinguen de su homologa federal, pero son similares a los dispuestos en la Ley Núm. 17 de 22 de abril de 1988 (29 LPRA sec. 155b)”. U.P.R. Aguadillo v. Lorenzo Hernández, supra, pág. 1017 esc. 14.
*39 III
Aclarado el nivel de responsabilidad de un patrono por los actos de hostigamiento sexual en el empleo cometidos por sus supervisores, procedemos a evaluar los hechos par-ticulares de este caso para dilucidar si las acciones del se-ñor Rivera constituyeron hostigamiento sexual en el em-pleo en su modalidad de ambiente hostil.
De las más de cincuenta determinaciones de hechos rea-lizadas por el Tribunal de Primera Instancia, cuyos hechos fundamentales se detallan en la Parte I de esta opinión y a las cuales se allanaron todas las partes al acudir mediante apelación al Tribunal de Apelaciones, se deduce inexorable-mente que las acciones del subgerente Rivera crearon un ambiente laboral intimidante, hostil u ofensivo para la Sra. Haydeé Ortiz González, en violación al Artículo 3(c) de la Ley Núm. 17, 29 LPRA sec. 155b. El Tribunal de Pri-mera Instancia concluyó que “[q]uedó claramente estable-cido que Rivera entabló un patrón no consentido de deni-grantes comentarios e intentos de roces corporales entre ambos que ocasionaron que la demandante fuese humi-llada como mujer al ser limitada en los ojos de Rivera a un mero objeto sexual para su disfrute”. Ortiz González v. Burger King, EDP2011-0180 (612), pág. 24, Caso Núm. CC-2009-0243, 1ra Pieza, Certiorari, Apéndice, pág. 255. Coincidimos enteramente con el foro primario y no encon-tramos justificación alguna que amerite alterar la aprecia-ción de la prueba vertida en corte, ni las conclusiones de derecho que realizara el tribunal.
Los acercamientos sexuales no deseados hacia una persona no deben ser tolerados en ningún ámbito de nuestra vida social, especialmente en la esfera laboral donde la in-teracción constante entre individuos es necesaria para cumplir cabalmente con un fin colectivo determinado. Para la inmensa mayoría de nuestros conciudadanos, el lugar de *40 empleo representa el espacio físico al cual acudir por nece-sidad para proveer el sostén de sus hogares. Por tal razón, la protección contra cualquier ataque a la honra y a la dignidad de los individuos debe salvaguardarse particular-mente en este espacio.
En el entorno laboral, el acoso sexual desvaloriza el tra-bajo femenino y, al mismo tiempo, su vivencia provoca, en quien lo sufre, un sentimiento de poco valor. De esta forma, se sostiene que “la circularidad de la experiencia es una marca propia de toda forma de discriminación”. M. del C. Díaz Descalzo, El acoso sexual en el trabajo, en E. Ruiz Pérez, Mujer y Trabajo, [s.L], Ed. Bomarzo, 2003, pág. 180. Es por ello que cuando los acercamientos provienen de un superior o de una persona de mayor jerarquía institucio-nal, la persona hostigada es sometida a una encrucijada inadmisible: o tolera los actos reprochables en su contra y así no ve afectado su sostén o los delata y se arriesga a que se afecten adversamente sus condiciones de empleo. Con esto en mente, las juezas y los jueces debemos cerciorarnos de que las circunstancias en que se realice el trabajo en una empresa, grande o pequeña, no mengüen la dignidad humana ni la intimidad del trabajador, ni que se discri-mine por razón de sexo, todos valores recogidos en nuestra legislación laboral, pero más importante aún, principios de dimensión constitucional y de derechos humanos. Sólo así contribuiremos a erradicar esta repudiable conducta.
Por todo lo anterior, reinstauraríamos en su totalidad la sentencia dictada por el Tribunal de Primera Instancia, la cual condenó a todos los demandados a satisfacer solidaria-mente a la señora Ortiz González las partidas siguientes: $10,000 por daños y perjuicios y angustias mentales por los actos de hostigamiento sexual cometidos por el subge-rente Rivera en violación al Artículo 3 de la Ley Núm. 17; $1,000 por los daños y perjuicios ocasionados por la super-visora Vázquez al permitir un ambiente de humillación posterior al momento en que la demandante delató el pa- *41 trón de hostigamiento sexual del señor Rivera, al amparo del Artículo 1803 del Código Civil; costas, y $2,750 por ho-norarios de abogado. Además, tal y como hiciera correcta-mente el Tribunal de Apelaciones, duplicaríamos la cuan-tía de $10,000 otorgada a la demandante por los actos de hostigamiento sexual a los que estuvo sujeta, en cumpli-mento con la orden establecida en el Artículo 11 de la Ley Núm. 17, 29 LPRA sec. 155j.
IV
Finalmente, considero necesario e imprescindible repli-car a algunas de las aseveraciones de la otra opinión de conformidad que acompaña esta ponencia. En ésta se nos invita a adoptar la normativa federal discutida en esta opinión.
No podemos acoger dicha invitación, pues tal proceder excede las facultades que nos han sido delegadas por el Pueblo de Puerto Rico mediante nuestra Constitución. Lo propuesto no es realmente interpretar flexiblemente un es-tatuto ambiguo, sino sustituir la intención legislativa in-equívoca del Artículo 5 por la del juzgador. En ausencia de defecto constitucional, no podemos sustituir el criterio del legislador porque éste nos parezca injusto o porque consi-deremos que lo legislado es malo o que hay mejores mane-ras de legislar. Ello, más que nada, sería legislar desde el estrado.
Luego de discutir la jurisprudencia puertorriqueña y federal sobre hostigamiento sexual, la otra opinión de confor-midad asevera la siguiente:
De lo expuesto, podemos concluir que previo a determinar si el patrono responde por los actos de hostigamiento sexual en el trabajo, es imprescindible atender cuál era la relación labo-ral existente entre la víctima y el alegado hostigador. Ello es así, pues la propia legislación distingue entre los actos de hos-tigamiento cometidos por el patrono, sus supervisores o agen-tes y aquellos realizados por los empleados. Sin embargo, *42 como explicaremos más adelante, consideramos que la respon-sabilidad patronal no debe ser impuesta de manera automá-tica en todos los casos de hostigamiento sexual cometidos por sus supervisores o agentes, y de que debemos adoptar la doc-trina federal vigente sobre la procedencia de una defensa afir-mativa en los casos de hostigamiento sexual por ambiente hostil. (Énfasis suplido). Op. conformidad del Juez Asociado Rivera García, págs. 70-71.
Como primer fundamento para su posición, se alega que hemos ignorado el historial legislativo. Primero lo evi-dente, si una ley es clara, no hay porque auscultar la in-tención legislativa más allá de su texto. Ahora bien, aun si tuviésemos que considerar el historial legislativo, debemos puntualizar que la “interpretación” esbozada sobre éste es selectiva pues se ampara, exclusivamente, en el Informe Conjunto presentado ante la Cámara de Representantes, en el cual se expresa que la norma debe adoptarse con el mismo alcance otorgado por el Tribunal Supremo federal en el caso Meritor Savings.
Como ya discutimos, en Meritor Savings se interpreta la protección contra el hostigamiento sexual al amparo de la Ley Federal de Derechos Civiles, cuya redacción es distinta a la Ley Núm. 17, y el Tribunal Supremo federal optó por distanciarse de las guías de la EEOC; es decir, el Tribunal Supremo nunca dijo que la responsabilidad patronal por actos de supervisores establecida en dichas guías fuera otra cosa que responsabilidad propiamente vicaria. De he-cho, dijo expresamente lo opuesto.
Por otro lado, tiene razón la otra opinión de conformidad al sostener que “cuando un estatuto es copiado o adoptado de una ley extranjera o de otra jurisdicción, se presume que se adopta con la interpretación que se le ha dado hasta ese momento en la jurisdicción de donde procede”. Beníquez et al. v. Vargas et al., 184 DPR 210, 245 (2012). El error estriba en que la ley que interpretó el Supremo federal en Meritor Savings no fue la ley que “copiamos o adoptamos” en nuestra jurisdicción.
*43 El máximo foro federal podía diferir de las guías recto-ras que esbozara la EEOC, pues su discreción para inter-pretar independientemente la ley estadounidense no se ve menoscabada de manera alguna por unas normas directi-vas creadas por una agencia administrativa. Cosa diame-tralmente opuesta es decir que esas guías, que sí fueron copiadas de manera idéntica a nuestra jurisdicción mediante la Ley Núm. 17, dicen algo contrario de lo que dis-ponen expresamente. Ante la claridad del lenguaje utili-zado, la conclusión contraria resulta francamente inverosímil.
El Tribunal de Apelaciones y la otra opinión de confor-midad omiten por completo mencionar el resto del historial legislativo de nuestro estatuto, el cual contraviene inex-pugnablemente su dictamen final. Tal proceder se revela poco juicioso. La Exposición de Motivos de la Ley Núm. 17 dispone expresamente que

[e]n Puerto Rico también, en casos de discrimen en el empleo por razón de ideas políticas, raza o color, edad, origen nacional y origen o condición social, la legislación existente establece la responsabilidad’ absoluta’ del patrono cuando el discrimen proviene de sus supervisores agentes o representantes.

[...] El grado de responsabilidad patronal por el hostiga-miento sexual en su centro de empleo se determinará por la relación de la persona que hostiga con el patrono” [...] Exposición de Motivos, Ley Núm. 17 de 22 de abril de 1988, 1988 Leyes de Puerto Rico 81.
En la propia Cámara de Representantes, el entonces Se-cretario de Justicia, Ledo. Héctor Rivera Cruz, aclaró el origen de la redacción seleccionada (las guías de la EEOC) y la favoreció precisamente como un mecanismo para re-chazar la interpretación realizada por el Tribunal Supremo federal en Meritor Savings, la cual había sido objeto de fuertes críticas. El Secretario también compareció ante el Senado de Puerto Rico y expresó indubitadamente el mismo parecer.
El historial completo de esta medida muestra, incluso, *44 una carta oficial del Secretario dirigida al entonces Gober-nador, Hon. Rafael Hernández Colón, en la que dispuso que el Departamento de Justicia rechazaba que se elimi-nara o alterara la redacción del Artículo 5, según propuesto por algunas personas, pues dicho artículo tenía el propósito de aclarar la incertidumbre creada a raíz de Meritor Savings. A igual conclusión llegó la Hon. Velda González de Modestti, presidenta de la Comisión Especial de Asun-tos de la Mujer del Senado, quien plasmó en su informe que la mejor manera de asegurar el compromiso por parte del patrono era adoptando la norma de responsabilidad “absoluta”. Como si fuera poco, el foro apelativo intermedio y la opinión de conformidad del Juez Asociado Señor Rivera García tampoco consideran el extenso debate legisla-tivo que se suscitó sobre el tema en la Cámara de Repre-sentantes antes de la aprobación final de la medida. De él se deduce que la responsabilidad “absoluta” del patrono fue discutida a cabalidad, a tal punto que ocasionó que algunos legisladores, específicamente el Representante Luciano Hernández, se abstuvieran de emitir un voto favorable a la adopción de la medida, a pesar de apoyar el resto, precisa-mente porque se incluyó este estándar de responsabilidad patronal.
Reafirmamos nuestro aval a la norma de hermenéutica reiterada arduamente por este Tribunal que dispone que cuando la ley es clara y no es ambigua, no hay necesidad de mirar más allá de su letra en búsqueda de la intención legislativa. Debemos descubrir y darle efecto a la intención expresada mediante la letra de la ley. Asimismo, aun si concluyéramos que la Ley Núm. 17 es ambigua en su len-guaje y nos viéramos obligados a evaluar el historial legis-lativo para adjudicar la controversia ante nos, un análisis completo de dicho historial tampoco nos permitiría avalar el camino trazado por la otra opinión de conformidad. Dis-tinto a lo que se sugiere en esa opinión, los debates plas-mados en ese historial no recogen meramente unas dife- *45 rendas de criterio que nos den margen amplio para escoger la postura que más nos satisfaga individualmente. Por el contrario, muestran que ambas propuestas (responsabili-dad propiamente vicaria de las guías de la EEOC y la in-terpretación de Meritor Savings) fueron discutidas seria-mente por nuestra Asamblea Legislativa, y que una de ellas prevaleció. Por lo tanto, nuestro deber es acatar y hacer cumplir la verdadera intención legislativa.
La opinión de conformidad también señala lo siguiente:
Luego de examinar el texto de la Ley 17 reconocemos que, ciertamente, el Art. 5 consigna que el patrono será responsa-ble por los actos de hostigamiento sexual cometidos por sus supervisores o agentes independientemente de que haya tenido conocimiento de los mismos. Sin embargo, este no excluye de manera categórica que el patrono tenga defensas afirmativas para enfrentar la responsabilidad que se le quiere imputar. (Enfasis suplido). Op. conformidad del Juez Asociado Rivera García, pág. 78.
Diferimos de este postulado. Claramente reconocemos en nuestra opinión la posibilidad de que el patrono pre-sente las defensas afirmativas que tenga a bien plantear. Por ello hicimos alusión a la jurisdicción californiana y a la posibilidad de aplicar mitigación de daños en algún momento. Pero lo que nos parece incuestionable es que fue el legislador mismo quien se ocupó de impedir expresa-mente que se cuestionara el nivel de responsabilidad que la ley impone.
La propuesta de esa opinión es la siguiente: aun cuando el legislador ha dispuesto que cada vez que ocurra X (hos-tigamiento sexual en el empleado por parte de un supervisor), procederá Y (responsabilidad propiamente vicaria del patrono), lo cierto es que esta expresión no es “categórica”, por lo tanto al crear una “defensa”, cuando ocurra X, no tenemos que ordenar Y. No podemos avalar este razonamiento.
En la otra opinión se plantea que, como estamos dis-puestos a reconocer una defensa, entonces es contradicto- *46 rio que no permitamos la que allí se sugiere. En realidad, no creí que fuera necesario aclarar que ninguna defensa afirmativa posible podría ser ilegal. La imposición de res-ponsabilidad vicaria —distinto a la de responsabilidad ab-soluta— nunca ha eliminado la posibilidad de que el afec-tado alegue defensas afirmativas “existentes”, que no contravengan la incuestionable voluntad legislativa plas-mada en leyes. Sería posible presentar como defensa la mi-tigación de daños porque ello no tiene nada que ver con el nivel de responsabilidad impuesto al patrono por actos de hostigamiento sexual en el empleo realizado por sus agen-tes o supervisores, sino que sólo alteraría la cuantía que éste finalmente pagaría de manera vicaria. Por lo tanto, no se contravendría la voluntad legislativa. A fin de cuentas, el error consiste en categorizar la responsabilidad im-puesta —vicaria— como una defensa cuando de lo que se trata es del nivel de responsabilidad que el legislador de-terminó corresponde imponer, sin más.
Lo cierto es que la otra opinión de conformidad trasluce un cierto grado de antipatía con la ley como está escrita. Si bien puede que no consideremos la norma establecida como la más sabia o más justa, no nos corresponde a nosotros corregirla. Esa es una pura función legislativa y no judicial.
Acatar la indudable voluntad del legislador no es sinó-nimo de que concordamos con su política pública, sino más bien que somos conscientes de cuál es nuestro rol tal cual se estatuyó en la Constitución. En este caso no pasamos juicio sobre las virtudes o deficiencias de la Ley Núm. 17, sino sobre su texto. Y es evidente que el propósito del Ar-tículo 5 era imponer responsabilidad propiamente vicaria a los patronos por actos de hostigamiento sexual en el em-pleo llevados a cabo por sus agentes y supervisores.
*47 V
Por los fundamentos expuestos anteriormente, revoca-ría la sentencia emitida por el Tribunal de Apelaciones y modificaría el dictamen del Tribunal de Primera Instancia conforme a los pronunciamientos esbozados en esta opinión.

 De entrada, debemos aclarar que al evaluar el expediente de este caso, no-tamos cierta ambigüedad con respecto al uso de los conceptos de responsabilidad vicaria y responsabilidad absoluta tanto por las partes involucradas como por los tribunales a quo e incluso por miembros de la Asamblea Legislativa, según reflejado en el historial Legislativo de la Ley Núm. 17.
A modo de excepción, nuestro ordenamiento jurídico impone responsabilidad civil a ciertas personas por los actos negligentes o culposos de otras personas cuando existe un nexo jurídico previo entre el causante del daño y quien está obligado a repararlo. Esto se conoce como responsabilidad vicaria. Por ejemplo, el Artículo 1803 del Código Civil de Puerto Rico, 31 LPRA 5142, dispone que los padres responderán por los actos torticeros de sus hijos; los tutores, por los de sus pupilos; los maestros, por los de sus estudiantes o aprendices mientras estén bajo su custodia, y los patro-nos, por los de sus empleados. En algunos casos, las personas responsables vicaria-mente podrán ser relevados de responsabilidad de lograr probar que emplearon toda la diligencia de un buen padre o madre de familia para prevenir el daño causado. En esos casos, se trata realmente de una responsabilidad primaria o directa. Sin embargo, en otras ocasiones, las personas llamadas a responder por actos de terceros serán responsables civilmente independientemente de la diligencia que hayan ejercido. En estos casos, estamos ante una responsabilidad estricta o propiamente vicaria.
Por otro lado, existe otro grado de responsabilidad que el Legislador podría imponer a una persona por actos de terceros: la responsabilidad absoluta. Cuando aplica la responsabilidad absoluta, el demandante está eximido de tener que probar uno de los elementos de la causa de acción para reclamar compensación por un acto torticero: la culpa o negligencia. Un ejemplo de este tipo de responsabilidad es el que se impone a un fabricante o vendedor de un producto que resulte defectuoso. *15 como puede apreciarse, la responsabilidad propiamente vicaria y la responsa-bilidad absoluta son conceptos diferentes que no deben utilizarse indistintamente. Mientras que la responsabilidad absoluta exime al demandante de tener que probar un elemento de la causa de acción para ser compensado por daños causados por el demandado, la responsabilidad propiamente vicaria requiere que se prueben todos estos elementos aunque el llamado a responder no sea quien haya actuado culposa o negligentemente.
En el caso ante nuestra consideración, nos vemos llamados a evaluar el tipo de responsabilidad impuesto a un patrono por los actos de hostigamiento sexual en el empleo de sus empleados. Conforme el lenguaje utilizado en la ley y a la naturaleza de la controversia, es evidente que la responsabilidad impuesta es una vicaria y no absoluta. El demandante no está exento de probar la culpa del hostigador, por lo que no estamos ante un caso de responsabilidad absoluta. Ello es totalmente indepen-diente del nivel de responsabilidad asignado al patrono, ya sea directa o propiamente vicaria.
Aunque en adelante utilizaremos adecuadamente los términos discutidos, en ocasiones nos veremos forzados a hacer referencia a fragmentos de las decisiones de los foros a quo, así como a expresiones legislativas, en las que se utiliza errónea-mente el concepto de responsabilidad absoluta para lo que es claramente responsa-bilidad propiamente vicaria. En esos casos, el lector deberá interpretarlo como un error conceptual del emisor.

 El panel que atendió inicialmente este caso estaba compuesto por su presi-denta, la juez Pesante Martínez, el juez Escribano Medina y la juez Pabón Charneco.

 Curiosamente, el Juez Asociado Stevens emitió una breve expresión concu-rrente en la que hizo constar que se unía tanto a la opinión mayoritaria como a la concurrente, por entender que no existía incongruencia alguna entre ambas posturas.

 Aunque atendidos por jueces distintos, ambos casos fueron publicados el mismo día y formulados como casos complementarios.

 El Juez Asociado Thomas emitió opinión disidente en ambos casos, a la cual se unió el Juez Asociado Scalia. Para los disidentes, se debe aplicar el estándar tradicional de negligencia, de manera que un patrono responda por los actos de hostigamiento sexual de un supervisor sólo si la demandante logra probar que el patrono incurrió en negligencia al permitir la conducta del supervisor.

 Recientemente, el Tribunal Supremo federal reafirmó las determinaciones en Ellerth y Faraguer al tiempo en que determinó que “supervisor”, para efectos de determinar la responsabilidad vicaria del patrono al amparo del Título VII, es aquel que puede tomar acciones tangibles en el empleo contra el empleado hostigado. Vance v. Ball State Univ., 133 S.Ct. 2434 (2013).

 A la misma conclusión llegó el Tribunal Supremo de California en State Dept. of Health Services v. Superior Court, 31 Cal. 4th 1026 (2003). La controversia en ese caso era idéntica a la que consideramos hoy: si, al amparo de la ley californiana, un patrono respondía de manera vicaria por los actos de hostigamiento sexual cometidos por sus supervisores. Tras discutir la doctrina federal sobre hostigamiento sexual, el máximo foro de California resolvió que la Fair Employment and Housing Act (FEHA) de California imponía tal responsabilidad a los patronos. Explicó que la redacción de la FEHA se tomó literalmente de las guías promulgadas por la EEOC, por lo que la doctrina federal respecto a este asunto no era vinculante y no podía cuestionarse seriamente la responsabilidad del patrono. Por haberse tomado de las guías de la EEOC, el lenguaje de la FEHA es una traducción literal al inglés del utilizado por nuestra Asamblea Legislativa en la Ley Núm. 17.
Luego de reconocer que los patronos responden vicariamente por todos los actos de hostigamiento sexual de Sus supervisores, el tribunal californiano aclaró que, por tratarse de responsabilidad vicaria y no absoluta, la propia conducta de un deman-dante podría limitar la cuantía de daños recobrables o incluso eliminarlos por completo. El Tribunal se amparó en la doctrina de mitigación de daños, la cual exige a un demandante ser diligente a la hora de reclamar sus derechos de manera que el causante no se vea obligado a responder por el agravamiento de daños que el deman-dante pudo haber evitado de haber actuado razonablemente. En ese sentido, adoptó los requisitos de la defensa afirmativa creada por el Tribunal Supremo federal en Ellerth y Faraguer, como parte de una nueva norma más detallada para evaluar si procedía reducir la cuantía a ser resarcida por el patrono. Conforme a la nueva norma, el patrono debe demostrar (1) que tomó todas las medidas necesarias para prevenir y corregir inmediatamente el ambiente de hostigamiento sexual en el lugar de empleo; (2) que el demandante, de manera irrazonable, no hizo uso de ninguno de los mecanismos preventivos u oportunidades correctivas provistas por el patrono, ni aprovechó otras oportunidades para evitar el daño, y (3) que el uso razonable de los procedimientos establecidos por el patrono habría prevenido efectivamente al menos parte de los daños sufridos por el empleado. De esta forma, el Supremo de California *33 enfocó la discusión no en torno a la responsabilidad del patrono; sino a la compen-sación en daños que debía concederse según la razonabilidad de las acciones de las partes. El Tribunal fue extremadamente cauteloso y reconoció que la nueva norma no implicaba que toda víctima de hostigamiento sexual tuviera que revelar inmedia-tamente cualquier acto sufrido para recobrar la cuantía completa por los daños sufridos. La razonabilidad de la no divulgación de un acto de hostigamiento, o el hecho de que no se hayan aprovechado los mecanismos oficiales provistos, deberá evaluarse según la totalidad de las circunstancias de cada caso y tomando en consi-deración la naturaleza delicada e íntima que permea esta problemática.
La norma creada por el Tribunal Supremo de California no es incompatible con nuestro ordenamiento jurídico. Al igual que en aquella jurisdicción, nuestra ley im-pone responsabilidad propiamente vicaria al patrono por actos de hostigamiento sexual de sus supervisores. No obstante, ello no impide que un patrono presente la defensa afirmativa de mitigación de daños, siempre que logre probar a satisfacción del tribunal los tres requisitos enumerados anteriormente. En el caso ante nuestra consideración, los hechos demuestran que la demandante aprovechó los mecanismos provistos por el patrono para lidiar con el problema de hostigamiento. Tanto es así, que el proceso culminó con el despido indirecto del supervisor demandando. Por lo tanto, no procede reducir la cuantía de daños conforme a la doctrina de mitigación de daños.

 Esta interpretación quedó modificada por Burlington Industries, Inc. v. Ellerth, 524 US 742 (1998), y Faraguer v. City of Boca Ratón, 524 US 775 (1998), mediante los cuales el Tribunal Supremo federal aclaró la norma aplicable para determinar la responsabilidad patronal independientemente de la modalidad de hos-tigamiento hostil de la que se trate.

 En aquel entonces citamos como fuentes excelentes de análisis y crítica a la norma de Meritor Savings los escritos siguientes: Employer Liability Under Title VII for Sexual Harassment after Meritor Savings Bank v. Vinson, 87 Colum. L. Rev. 1258 (1987). Para críticas a la doble medida, citamos J.L. Dolkart y E.L. Malchow, Sexual Harassment in the Workplace: Expanding Remedies, 23 Tort & Ins. L.J. 181 (1987); Between the Boss and a Hard Place: A Consideration of Meritor Savings, FSB v. Vinson and the Law of Sexual Harassment, 67 B.U.L. Rev. 445 (1987), y G. Dodier, Meritor Savings Bank v. Vinson: Sexual Harassment at Work, 10 Harv. Women’s L.J. 203 (1987).
Para un análisis más reciente sobre el tema, especialmente a raíz de las decisiones del Tribunal Supremo federal en Ellerth y Faraguer, véanse: E. Jacob Lindstrom, All Carrots and No Sticks: Moving Beyond the Misapplication of Burlington Industries, Inc., v. Ellerth, 21 Hasting’s Women’s L.J. 111 (2010); L.P. Gearty, Labor and Employment LawScope of Faraguer-Ellerth Affirmative Defense to Vicarious Liability Not Defined by Employer’s Own Sexual-Harassment Policy—Chaloult v. Insterstate Brands Corp., 540 F.3d 64 (1er Cir. 2008), 42 Sufflok U.L. Rev. 399 (2009); M.E. Johnson, “Avoiding Harm Otherwise:" Reframing Women Employees’ Responses to the Harms of Sexual Harassment, 80 Temp. L. Rev. 743 (2007); G. George, Theory and Practice: Employer Liability for Sexual Harassment, 13 Wm. & Mary J. Women & L. 727 (2007); S.D. Carle, Acknowledging Informal Power Dynamics in the Workplace: A Proposal for Further Development of the Vicarious Liability Doctrine in Hostile Environment Sexual Harassment Cases, 13 Duke J. Gender L. & Pol’y 85 (2006).